1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   AMAZING INSURANCE, INC.,                No.  2:19-cv-01349-TLN-CKD

12              Plaintiff,

13        v.                                 **ORDER RE MOTION FOR TEMPORARY
                                             RESTRAINING ORDER AND FOR
14   MICHAEL A. DiMANNO and                  ORDER TO SHOW CAUSE**
     ACCUIRE, LLC,
15

16              Defendants.

17

18        This matter is before the Court on Plaintiff Amazing Insurance, Inc.'s ("Plaintiff") Motion

19   for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should

20   Not Issue.  (ECF No. 7.)  Defendants Michael A. DiManno, an individual, and Accuire, LLC, a

21   Florida limited liability company (collectively, "Defendants"), have not appeared.  The Court

22   previously dismissed the underlying Complaint (ECF No. 1) *sua sponte* and without prejudice, on

23   the grounds that the Complaint failed to allege the components of federal subject-matter

24   jurisdiction as required by 28 U.S.C. § 1332 (ECF No. 5).  Plaintiff filed a First Amended

25   Verified Complaint ("FAC") (ECF No. 6), and renewed its request for a temporary restraining

26   order (ECF No. 7).

27   ///

28   ///

                                           1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed its FAC on July 23, 2019, alleging breach of contract, breach of fiduciary duties, conversion, and breach of the implied covenant of good faith and fair dealing.  (ECF No. 6 ¶¶ 43–64.)  The FAC also requests declaratory relief pursuant to the Declaratory Judgment Act. (ECF No. 6 ¶¶ 36–42.)  The FAC describes a business dispute over the ownership of Accuire and its wholly owned subsidiaries, which "are staffing companies and professional employer organizations."  (ECF No. 6 ¶ 7.)  Accuire is allegedly a Florida company with a principal place of business in Folsom, California.  (ECF No. 6 ¶ 3.)

Plaintiff claims that it purchased a seventy-five percent ownership stake in Accuire pursuant to a "Binding Letter of Understanding" executed in November 2016.  (ECF No. 6 ¶ 8.) DiManno owned the remaining twenty-five percent of Accuire and served as its Chief Executive Officer.  (ECF No. 6 ¶¶ 9–10.)  The FAC alleges that Accuire operated pursuant to the terms of an "Amended Operating Agreement," which contemplated that corporate action could be taken without an in-person meeting so long as a sufficient number of Accuire's members consented in writing.  (ECF No. 6 ¶ 11; ECF No. 6-2 at 8.)  The FAC further alleges that Plaintiff and its owner, an individual named Alex J. Campos, are "sole guarantors for several of Accuire's obligations based on DiManno's lack of creditworthiness to secure the obligations alone."  (ECF No. 6 ¶ 12; *see also* ECF No. 6-1 at 6–7 (setting forth assumption by Plaintiff of certain obligations of Accuire in connection with Plaintiff's purchase of controlling membership interest in November 2016).)

On March 30, 2019, Plaintiff, Accuire, and DiManno executed a term sheet that contemplated Accuire buying out Plaintiff's seventy-five percent interest in Accuire.  (ECF No. 6 ¶ 13; ECF No. 6-5 at 3–4.)  The term sheet acknowledged that as of the date of its execution, Plaintiff was "a 75% owner of Accuire" and DiManno was a "25% owner of Accuire before this transaction and shall be the 100% owner" of Accuire on the closing date.  (ECF No. 6-5 at 2–3.) Among numerous other terms, the term sheet set forth that Accuire would pay a $350,000 down payment by July 1, 2019, as a condition of closing.  (ECF No. 6 ¶ 13; ECF No. 6-5 at 3.)  The FAC alleges that this down payment was never paid by Accuire or DiManno, which means that

the transfer of Accuire's majority membership interest from Plaintiff to Accuire and DiManno never occurred.  (ECF No. 6 ¶ 14.)

Plaintiff alleges that the failure of Accuire and DiManno to produce the anticipated $350,000 down payment — along with the fact that Plaintiff knew that Accuire currently had unpaid debts and other financial obligations totaling over a million dollars, some of which could subject Plaintiff and Campos to direct liability if not paid or settled — caused Plaintiff to set a special meeting of Accuire's members for July 15, 2019, to address Accuire's management and financial condition.  (ECF No. 6 ¶¶ 15–18; ECF No. 7-1 at 2–3.)  DiManno knew about the meeting no later than July 10.  (ECF No. 6 ¶ 19.)  However, DiManno did not attend the July 15 meeting, and allegedly called the police on Plaintiff's representative — an individual named Vikash Jain — who had arrived at Accuire's offices for the meeting.  (ECF No. 6 ¶¶ 19–24.)

After the meeting adjourned without any action being taken, Plaintiff exercised its rights under the amended operating agreement to take corporate action by executing a "Written Consent of Members Holding Majority Units."  (ECF No. 6 ¶ 27.)  Plaintiff, through Campos as its President, executed the written consent on July 15.  (ECF No. 6-11 at 5.)  This written consent purported to terminate DiManno's employment as Accuire's Chief Executive Officer and to appoint a new Board of Directors consisting of Campos, Jain, and DiManno.  (ECF No. 6 ¶ 27.)  The written consent also purported to give Jain authority to (i) negotiate with some of Accuire's creditors regarding outstanding notes owed to them by Accuire; (ii) engage a consultant to "reduce unnecessary expenses;" (iii) notify Accuire's vendors, its bank, its labor union, its landlord, and an insurance company of Accuire's new management structure; (iv) require two signatures on any company check and for all outgoing wires and financial transfers; and (v) take over Accuire's e-mail system.  (ECF No. 6-11 at 3.)  The written consent also contemplated that Accuire's new management would (i) hire an audit firm to undertake a forensic accounting, (ii) seek additional capital, or (iii) seek to sell Accuire.  (ECF No. 6-11 at 3.)

By way of the pending motion, Plaintiff seeks an order to (i) restrain and enjoin Defendants "from continuing to exercise control over Accuire, LLC, its employees and subsidiaries," and (ii) force Defendants to comply with the July 15 written consent.  (ECF No. 7

at 2.) Plaintiff's primary argument is that allowing DiManno to continue exercising control over Accuire will result in significant damage to its business reputation, credit profile, and goodwill. (ECF No. 7-1 at 8–9.) Plaintiff's evidence of this impending reputational harm includes the averment in an affidavit submitted by Campos that Accuire currently owes $700,000 to Vensure Employer Services, $120,000 to the State of California, and $440,000 to various former members of Accuire. (ECF No. 6-6 ¶ 6.) It also includes a declaration submitted by a former Accuire president named Ronald Wolcott, stating that DiManno issued a million-dollar line of credit to a client that had not been recovered as of April 2018. (ECF No. 6-7 ¶ 4.) And it includes the allegation that even while Accuire was drawing down millions of dollars on a credit line, it "has failed to fulfill its obligations under its line of credit with Sterling National Bank, which failure puts Accuire at risk of default and accordingly puts both Amazing and Mr. Campos at risk of being liable for the debt." (ECF No. 6 ¶ 17; *see also* ECF No. 6-6 ¶ 7 (averring that the balance on this line of credit is currently unknown to Plaintiff).)

## II.    STANDARD OF LAW

### A.    Temporary Restraining Orders Generally

A district court may issue a temporary restraining order without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order is an extraordinary remedy, the underlying purpose of which is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). In this context, the status quo "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

"[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially identical.'" *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir.) (quoting *Stuhlbarg Int'l*

*Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)),

*reconsideration en banc denied*, 858 F.3d 1168 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 448

(2017).  Hence, a temporary restraining order "may only be awarded upon a clear showing that

the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22

(2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  A plaintiff seeking

a temporary restraining order must therefore make a clear showing "[1] that he is likely to

succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

interest."  *Id.* at 20.

Alternatively, a district court may weigh a plaintiff's showing on the four *Winter* elements

using a sliding scale.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Pursuant to this alternative approach, a plaintiff may obtain preliminary relief where it

demonstrates "serious questions going to the merits" of its underlying claims as well as "a

balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows

that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*

### B.  Irreparable Harm

Regardless of the analytical method used by a district court, a plaintiff must "make a

showing on all four prongs" of the *Winter* test to obtain a preliminary injunction or temporary

restraining order.  *Id.*  Generally, for the component of the *Winter* test that requires a plaintiff "to

demonstrate that irreparable injury is *likely* in the absence of" a temporary restraining order,

*Winter*, 555 U.S. at 22, "economic injury alone does not support a finding of irreparable harm,

because such injury can be remedied by a damage award," *Rent-A-Ctr., Inc. v. Canyon Television

& Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Even though economic injury is not enough to show irreparable harm in the context of a

request for preliminary relief, "loss of control over business reputation and damage to goodwill

could constitute irreparable harm."  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d

1239, 1250 (9th Cir. 2013).  But a plaintiff who attempts to establish irreparable harm via loss of

business reputation and goodwill must proffer evidence of that loss — a district court may not

base a finding of reputational harm on "platitudes rather than evidence." *Id.* Furthermore, the irreparable harm alleged by a plaintiff must also be imminent. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (stating that a plaintiff must demonstrate "immediate threatened injury as a prerequisite to preliminary injunctive relief").

As a result, evidence of reputational damage or harm to business goodwill sufficient to merit entry of preliminary relief typically incorporates information provided by, or from the perspective of, market-based sources external to the plaintiff itself. *See, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865 (9th Cir. 2017) (finding likelihood of harm to business goodwill was supported by declaration that incorporated statements from plaintiff's customers raising concerns about general behavior of competitor companies like defendant's); *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) (finding insufficient showing of reputational harm alleged to result from non-movant's website's association with marijuana, where evidence failed to establish that movant's customers were aware of non-movant's website or its association with marijuana); *DFO, LLC v. Denny Bar Co., LLC*, No. 2:18-cv-02226-JAM-KJN, 2018 WL 5880813, at *2 (E.D. Cal. Nov. 8, 2018) (holding that declaration submitted by plaintiff's employee was insufficient to establish likelihood of harm to business goodwill because it was based only on the declarant's opinion and experience regarding the relevant market, and therefore "fail[ed] to present any concrete evidence that a loss of control of [plaintiff's] business reputation has occurred or is likely to occur at all").

**III.   ANALYSIS**

**A.     Irreparable Harm in Absence of Temporary Restraining Order**

Plaintiff argues that it will suffer irreparable harm if the Court does not issue a temporary restraining order because allowing DiManno to continue mismanaging Accuire's assets, debts, and obligations will damage Plaintiff's "credit worthiness, business reputation, and goodwill." (ECF No. 7-1 at 8.) Plaintiff also argues that "damage to its reputation and credit worthiness" will result if "Defendants are allowed to continue to neglect their debts, which subjects Accuire to litigation in which Amazing would ultimately be responsible for 75% of any judgment and/or

///

6

certain debts." (ECF No. 7-1 at 8.)[1]  The Court finds that this argument is insufficient to constitute "a clear showing" that "irreparable injury is *likely* in the absence of" the requested temporary restraining order. *Winter*, 555 U.S. at 22.  This is because Plaintiff's evidence of harm to its creditworthiness, reputation, and business goodwill is either too speculative or fails to demonstrate imminence. *See Herb Reed*, 736 F.3d at 1250; *Caribbean Marine Servs.*, 844 F.2d at 674.

### i.        Sterling National Bank Credit Line

For instance, there is ample evidence in the record pointing to Accuire's corporate borrowing on a line of credit provided by Sterling National Bank. (*See* ECF No. 6 ¶ 17; ECF No. 6-6 ¶ 7.)  But Plaintiff submitted no evidence from representatives at Sterling National Bank, or from other external sources, that speak to the bank's concern about Accuire repaying its credit line, *see DFO*, 2018 WL 5880813, at *2 (holding that statement from declarant associated with plaintiff's company was insufficient to establish likelihood of harm to business goodwill, because declaration was based only on the declarant's opinion and experience regarding the relevant market), or that describe any actual impending calls on Plaintiff's guarantee of Accuire's debts, (*see* ECF No. 7-1 at 8 (referring to potential damage to Plaintiff and Campos "caused by having their personal guarantee called due")).

Nor is there any evidence from, for example, Accuire's customers or vendors or from third-party business analysts, demonstrating external awareness of Accuire's credit issues that might lead to negative market conclusions about its creditworthiness. *See Disney Enters.*, 869 F.3d at 865 (finding likelihood of harm to business goodwill was supported by declaration that incorporated statements from plaintiff's customers); *Titaness Light Shop*, 585 F. App'x at 391 (noting lack of evidence proffered to establish that movant's customers were aware of relationship between movant's and non-movant's respective websites).  Additionally, the Campos affidavit states quite plainly that Plaintiff, through no fault of its own, does not actually know the

---

[1]     By characterizing irreparable harm in this manner, Plaintiff implicitly and correctly recognizes that its claims for money damages cannot support issuance of a temporary restraining order. *Rent-A-Ctr.*, 944 F.2d at 603 (stating the rule that "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award").

outstanding balance on its line of credit, much less when that balance might be called due by Sterling National Bank.  (ECF No. 6-6 ¶ 7.)  It would therefore be speculative to hold that evidence of credit line draws — even evidence of substantial draws effectuated quite recently (*see* ECF No. 6 ¶ 17) — necessarily suggests that Accuire's business reputation will suffer in the absence of a temporary restraining order, *see Caribbean Marine Servs.*, 844 F.2d at 674 (requiring "immediate threatened injury as a prerequisite to preliminary injunctive relief").

### ii.  Debts Owed by Accuire to Third Parties

Much the same is true of the money Accuire apparently owes to Vensure Employer Services, the State of California, and various former members of Accuire.  (*See* ECF No. 6-6 ¶ 6.)

There is nothing definitive in the record establishing that these debts are overdue, much less evidence that Plaintiff or Campos are at imminent risk of having their personal guarantee called to satisfy Accuire's outstanding obligations.  (*See* ECF No. 7-1 at 8); *Caribbean Marine Servs.*, 844 F.2d at 674 (requiring "immediate threatened injury as a prerequisite to preliminary injunctive relief").  And simply carrying debt on its books does not in and of itself demonstrate that Accuire is otherwise in imminent danger of reputational harm, for Plaintiff supplies no evidence that any of the three creditors referenced in its moving papers harbors commercial ill will toward Accuire because of its debts.  *See Disney Enters.*, 869 F.3d at 865 (finding likelihood of harm to business goodwill was supported by declaration that incorporated statements from plaintiff's customers).  Nor does Plaintiff provide evidence that uninvolved third parties are aware of — much less that they hold a negative opinion of Accuire's credit worthiness as a result of — its debts.  *See DFO*, 2018 WL 5880813, at *2 (holding that declaration was insufficient to establish likelihood of harm to business goodwill because it was based only on the declarant's opinion and experience regarding the relevant market).

### iii.  Credit Line Extended to Customer

Finally, with respect to the million-dollar credit line Accuire apparently issued to one of its customers, "the majority of which remains unpaid" (ECF No. 6 ¶ 16), there is once again nothing to tie this allegation to any imminent harm to Accuire's business goodwill or reputation, *see Caribbean Marine Servs.*, 844 F.2d at 674 (requiring "immediate threatened injury as a

prerequisite to preliminary injunctive relief"). Indeed, there is at least a colorable argument to be made that Accuire's lenient approach to the credit line it issued could actually improve, rather than harm, its business reputation and goodwill with this particular Accuire customer. *See WMX Techs., Inc. v. Miller*, 197 F.3d 367, 374 (9th Cir. 1999) ("Essentially, the goodwill of a business is its value as a going concern and is made up of many factors, such as location, patronage of customers, relations with suppliers, experience of employees, effectiveness of management, and many other factors."). It would therefore be speculative to hold that evidence of a credit line Plaintiff extended to a customer makes it likely that Accuire's business reputation will suffer as a result. *See Winter*, 555 U.S. at 22 (holding that a plaintiff moving for preliminary relief must show that "irreparable injury is *likely* in the absence of" the requested order).

*iv.*     *Conclusion*

In short, while Plaintiff has proffered evidence that Accuire is currently extending credit to and receiving credit from a number of sources (*see* ECF No. 6 ¶¶ 16–17), it has not provided evidence sufficient for the Court to find that irreparable injury in the form of harm to Accuire's business relationships, creditworthiness, or goodwill "is *likely* in the absence of" a temporary restraining order, *Winter*, 555 U.S. at 22.

## B.     Remaining Factors

A plaintiff must "make a showing on all four prongs" of the *Winter* test to be eligible for the extraordinary remedy of a temporary restraining order. *All. for the Wild Rockies*, 632 F.3d at 1135. Since the Court concludes that Plaintiff has not made the required showing of imminent and irreparable harm to its business relationships, creditworthiness, or goodwill in the absence of a temporary restraining order, the Court declines to address the remaining *Winter* factors. *See MD Helicopters, Inc. v. Aerometals, Inc.*, No. 2:16-cv-02249-TLN-AC, 2018 WL 489102, at *2 (E.D. Cal. Jan. 19, 2018) ("The Court finds Plaintiff fails to make a showing on irreparable harm and, therefore, declines to address the remaining factors.").

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's renewed request for a temporary restraining order is DENIED. (ECF No. 7.) Plaintiff may notice a motion for a preliminary injunction at its

convenience in accordance with the Local Rules of the United States District Court for the Eastern District of California.  *See* L.R. 231(d).

IT IS SO ORDERED.

Dated: July 26, 2019

Troy L. Nunley
United States District Judge